UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHARON ROTH<br>4852 W BRADDOCK ROAD, APT 30<br>ALEXANDRIA, VA 22311<br><br>    Plaintiff,<br><br>    v.<br><br>WEST END PLASTIC SURGERY<br>2440 M STREET NW, #200<br>WASHINGTON, DC 20037<br><br>    Defendant. | Civil No. _____<br><br>(Jury Trial Requested) |

## COMPLAINT

Plaintiff Sharon Roth ("Plaintiff" or "Ms. Roth"), by and through undersigned counsel, through her undersigned counsel of record, files this Complaint against Defendant, West End Plastic Surgery, Inc. (hereinafter, referred to as "Defendant" or "WEPS") on the following grounds:

1. This action is brought by the Plaintiff for damages against Defendant for discrimination on the bases her age (YOB: 1956), disability, and personal appearance (overweight, no plastic surgery, average), in violation of the D.C. Human Rights Act ("DCHRA"), D.C. Code § 2-1401.11. In addition, Defendant misclassified Plaintiff, improperly precluding her from hourly and overtime pay in violation of the Federal Fair Labor Standards Act of 1938 (the "FLSA"), as amended, 29 U.S.C. §§201 et. seq., the District of Columbia's

Minimum Wage Act ("MWA"), D.C. Code § 32-1001, *et. seq.*, the District of Columbia's Wage Payment and Collection Law ("WPCL"), D.C. Code § 32-1301 *et. seq.*

## PARTIES

2. Plaintiff is a disabled woman over the age of 40, who has never had plastic surgery. At all times relevant to the facts alleged in this lawsuit, she was employed by Defendant.

3. Defendant is a cosmetic plastic surgery practice in Washington, D.C.

4. During all times relevant to this action, Defendant met the jurisdictional prerequisites for a claim under the D.C. Human Rights Act.

5. During the relevant time period, Defendant was an "employer" as defined by the Age Discrimination in Employment Act, Americans with Disabilities Act, and the D.C. Human Rights Act. Defendant, including its supervising personnel, officials, agents, officers, and employees were responsible for all acts complained of herein.

## JURISDICTION

6. This Court has subject matter jurisdiction over this case pursuant to D.C. Code §§ 2-1403.16 and 11-921; 29 U.S.C. § 626 (c); 42 U.S.C. § 2000e-5(f). This Court has personal jurisdiction over WEPS pursuant to D.C. Code §§ 13-422 and 13-423(a).

## STATEMENT OF FACTS

7. Ms. Roth has forty-six years of experience as a medical/healthcare professional and over ten years of experience as a surgical coordinator integrated into her previous position as practice manager. In June 2018 she was interviewed for, offered, and accepted a position with West End Plastic Surgery as a Surgical Coordinator. She relocated from New Jersey to Washington, DC to take on her new role.

8. As the Surgical Coordinator, Ms. Roth was responsible for meeting with patients after they consulted with surgeons to review their surgery plan options, explain the process, answer questions, and provide patients with a cost analysis for each plan from a set price list. When patients were ready to proceed, they would contact Ms. Roth to schedule their surgery. She successfully managed the operating room ("OR") schedule for four surgeons[1]. Ms. Roth was tasked with scheduling surgeries, pre-ops, and post-ops; answering questions; rescheduling; and managing occasional insurance requests and payments. In addition, Ms. Roth ordered supplies (e.g., breast implants, chin implants, mandibular, etc.), maintained the consignment stock, prepared the implants for the upcoming surgeries in the operating room, among various other duties as assigned.

9. During the interview, and after reviewing the team page that showed photos of staff, Ms. Roth said to Administrator Deborah Schrag, "Deborah, I have one concern. I do not look like everybody here. I look different. I am a 'before.' I am always going to be a 'before.' Even when I leave, I am going to be a 'before.' I need to know how [the practice feels] about that because I do not look like the rest of the team and they are all young, pretty, and blonde."

10. Around August 2018, Ms. Schrag was horrified to discover Ms. Roth's age when she asked Ms. Roth for her date of birth to register her for health insurance. Ms. Roth said she was born in 1956 and Ms. Schrag asked, "not six-six?" When Ms. Roth confirmed that she was born in 1956, Ms. Schrag shrieked and said, "oh my God!"

11. Over the course of nine months after joining WEPS, Ms. Roth was provided a $12,000 annual pay increase for her outstanding performance. She received various verbal accolades, emails, flowers, and cards from patients, co-workers, and surgeons. On August 20,

---

[1] Ms. Roth's predecessor only had one surgeon to schedule. Two per diem surgeons (Dr. Patrick and Dr. Hannan) joined the practice about three weeks before Ms. Roth started and then, around August 2019, a fourth surgeon, Dr. Cohen, was added.

2020, Ms. Roth received a handwritten card from Ms. Schrag and Dr. Ruff expressing their appreciation for her hard work and dedication to the practice and that she was respected and appreciated.

12.     Around August 2019, Dr. Justin Cohen (Surgeon) joined the practice full-time. His schedule was immediately filling surgeries. Additionally, Dr. Cohen began discussing a practice management system called Yellow Telescope with Ms. Roth. He informed Ms. Roth that the owners of Yellow Telescope were friends of his and sent her an email with various podcasts about the company. Unbeknownst to Ms. Roth, Dr. Cohen later brought the Yellow Telescope system to Dr. Ruff's attention and Dr. Ruff agreed to proceed with the transition.

13.     Over the last year and a half of her employment, Ms. Roth was forced to work overtime while other staff members were provided schedule adjustments. Ms. Roth's work hours were originally set from 8:00 a.m. to 4:00 p.m. She was told she could not leave while consultations were still occurring and/or scheduled to come in and ultimately worked until around 5:30 – 6:00 p.m. daily. She requested to be relieved from working fifty plus hours per week and had ongoing conversations with both Ms. Schrag and Dr. Ruff as to how to remedy the situation. Ms. Roth explained to Ms. Schrag and Dr. Ruff that she was exhausted resulting from working so many hours; however, no change was made.

14.     Around March 2020, WEPS was shut down for seven weeks due to the pandemic. Ms. Roth continued working from home after the practice management system was uploaded to her laptop. She worked more than eight hours per day scheduling and/or rescheduling patients for the duration of the shutdown. On May 11, 2020, WEPS reopened, and the staff returned to the facility. Surgeries were scheduled and proceeded the following day (May 12, 2020).

15. On June 26, 2020, Ms. Schrag stopped Ms. Roth as she was walking by Ms. Schrag's office and said, "Sharon, congratulations," and "happy anniversary" on her two-year anniversary with WEPS. Ms. Schrag leaned in and whispered that she was trying to get Ms. Roth a raise. Ms. Roth thanked Ms. Schrag but never heard anything further, nor received a raise.

16. After returning from the pandemic, Ms. Roth continued working overtime with no relief. Instead of remedying the situation, she received the August 20, 2020, card from Ms. Schrag and Dr. Ruff expressing their appreciation for her dedication and hard work.

17. In late October, early November 2020, Ms. Roth was scheduling surgeries when she noticed interviews on the surgeons' calendars when she was scheduling surgeries. However, she was not aware of any open/available positions. She began seeing new names close to the end of the day scheduled to meet with Ms. Schrag, Dr. Ruff, and Dr. Cohen. Ms. Roth did an online search for job postings and located a posting on Indeed. The employer was listed as confidential, but Ms. Roth recognized the practice by the description[2]. The job posting advertised three plastic surgery patient sales executive positions for a plastic surgery practice in Washington DC with a salary between sixty thousand to one hundred and ten thousand dollars per year. This included an annual salary and bonuses with an uncapped income. The description for the positions matched that of Ms. Roth's. The base salary for not one, but three candidates, was far greater than Ms. Roth's and she had never received a bonus or commission during her employment with WEPS.

18. Ms. Roth met with Dr. Ruff and asked if he was satisfied with her work. Dr. Ruff replied, "Yes. Do you know you are the best surgical coordinator we have ever had? We never get complaints about you. Everybody loves you." Ms. Roth was not convinced, having seen the job posting. Ms. Roth asked Dr. Ruff if she should be looking for new employment. Dr. Ruff did not look directly at Ms. Roth for the remainder of the conversation and his only response to her

---

[2]Prior to this specific positing, vacancies were posted openly with the name of the practice and the address.

question was, "not right now." Ms. Roth presented the job posting to Dr. Ruff and he acted as if he was unaware of it. Eventually, Dr. Ruff acknowledged the ad and said, "yes, but it is not about you. It is not replacing you." Dr. Ruff confessed that Ms. Schrag and Dr. Cohen had authored the posting. At the end of the meeting, Dr. Ruff apologized for not telling Ms. Roth about the posting and promised to schedule a conference with the Ed Syring from Yellow Telescope for Ms. Roth. Ms. Roth subsequently questioned both Ms. Schrag and Dr. Cohen regarding the posting both denied any involvement, but suggested Dr. Ruff was to blame.

19. Ms. Roth attended a phone conference the next day with Mr. Syring. She discovered the transition to Yellow Telescope had been in process for at least ten months. Mr. Syring confirmed they had been working on the transition for some time, had been attending teleconferences, and the staff had gone to Miami for a three-day seminar. Mr. Syring explained who the company was and what training it offers. He provided insight into how the system works but did not provide any specific training to Ms. Roth. However, he did confirm that the company trains current employees.

20. In late October or early November 2020[3], Ms. Roth became ill and was prescribed medication that caused her to have blood in her urine. She called to notify Ms. Schrag of the issue and that she could not come in to work. However, she ensured Ms. Schrag that she had everything she needed and would continue working from home. Ms. Roth received her next paycheck and noticed that she was docked a day's pay. She came to Ms. Schrag's office to notify her that she was docked a day's pay and Ms. Schrag asked, "were you not out sick?" Ms. Roth explained that she continuously works excess overtime, she informed Ms. Schrag she was working from home, and she was never notified that her pay would be docked. In addition, Ms. Roth requested that she be treated the same as other staff members in that Ms. Schrag allow

---

[3] The date fell within the October 25 – November 10, 2020 pay period.

other, younger staff members to be compensated with paid vacation/sick time who are not entitled to receive it. Ms. Schrag replied, "you do not get paid overtime." However, Pratistha Prasai (late 20s or early 30s), a newly hired medical assistant, once explained to Ms. Schrag that she was upset about working overtime. Ms. Schrag adjusted Ms. Prasai's schedule to eliminate her overtime. Additionally, Ms. Prasai was not eligible for PTO, yet she has been paid for all the time she has requested off, which totals approximately two months of time. Ms. Sullivan had also taken many days off for medical appointments and confirmed to Ms. Roth that her pay has never been docked.

21. The next day there was a FAQ sheet hanging on the bulletin board that said, "can a salaried employee be required to work more than forty hours and not get paid overtime? Most employers expect their exempt employees to work the number of hours necessary to get their job done. It does not matter if that takes more or fewer than forty hours per week. Even if you are exempt employee works seventy hours in a week, you are still only required to pay them their standard base salary." No other employees besides Ms. Roth were required to work overtime. Even when she attempted to leave, she was physically stopped and told "you cannot leave we have more people." Ms. Roth made a copy of the notice and placed it on the board in her office. Upon entering her office, Ms. Schrag indicated the notice was not meant for Ms. Roth and later, the notice was removed from the bulletin board.

22. Ms. Roth was scheduled for vacation during the last week of December 2020 continuing into the first week of January 2021. On Thursday (January 7, 2021), Ms. Schrag told Ms. Roth the practice was going in a different direction and confirmed that it would be Ms. Roth's last day.

23. After the new hires had been selected, Dr. Ruff noted, "Dr. Cohen got his Barbies," implying that Dr. Cohen had successfully advocated for a conventionally attractive sales staff.

## COUNT ONE
### Unpaid Wages in Violation the Fair Labor Standards Act
### [29 U.S.C. §§ 201 *et. seq*]

24. Plaintiff re-alleges and incorporates all allegations of this Complaint as if fully set forth herein.

25. The Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et. seq, requires employers to pay non-exempt employees an overtime premium of one and one half times their regular hourly rate for hours worked in excess of 40 hours in any one work week.

26. Defendant violated the FLSA by knowingly failing to pay Plaintiff and one and one half times her regular hourly rate for hours worked in excess of 40 hours in any one work week.

27. Plaintiff was an employee and Defendant was an "employer" under the FLSA § 203.

28. Defendant's violations of the FLSA were repeated, knowing, willful, and intentional.

29. Defendant is liable to Plaintiff under the FLSA § 216(b), for all unpaid overtime wages, plus an equal amount in liquidated damages, interest, attorney's fees, costs, and any other and further relief this Court deems appropriate.

## COUNT TWO
### Unpaid wages in violation of the District of Columbia's
### Minimum Wage Act ("MWA")
### [D.C. Code § 32-1001, *et. seq*]

30. Plaintiff re-alleges and incorporates all allegations of this Complaint as if fully set forth herein.

31. The MWA requires that employers pay non-exempt employees one and one-half times their regularly hourly rate for all hours over forty worked in one week.

32. Plaintiff was an employee and Defendant was an "employer" as defined by D.C. Code §32-1002.

33. Defendant violated the District of Columbia's minimum wage law by failing to compensate Plaintiff at the rate of time-and-one-half her regular hourly rate for every hour worked in excess of forty hours in any one work week.

34. Defendant's violations of the District of Columbia's minimum wage law were repeated, knowing, willful, and intentional.

35. Defendant is liable to Plaintiff for all unpaid overtime wages, plus treble that amount in liquidated damages (or such greater amount as may be authorized by law), interest, attorneys' fees, litigation costs and any other and further relief this Court deems appropriate.

**COUNT THREE**
**Failure to Timely Pay Wages in violation the District of Columbia's**
**Wage Payment and Collection Law ("WPCL")**
**[D.C. Code § 32-1301 *et. seq*]**

36. Plaintiff re-alleges and incorporates all allegations of this Complaint as if fully set forth herein.

37. D.C. Code § 32–1302 provides that "[a]n employer shall pay all wages earned to his or her employees on regular paydays designated in advance by the employer and at least twice during each calendar month."

38. D.C. Code § 32-1303 further provides that "[w]henever an employer discharges an employee, the employer shall pay the employee's wages" within four days and that

"[w]henever an employee … quits or resigns, the employer shall pay the employee's wages due upon the next regular payday or within 7 days from the date of quitting or resigning, whichever is earlier."

39. D.C. Code § 32-1301(3) defines wages to include, inter alia, an "overtime premium."

40. Plaintiff was an employee and Defendant was an "employer" as defined by D.C. Code § 32–1301.

41. Defendant unlawfully failed or refused to pay Plaintiff all wages due—including her premium rate for overtime—on her regular payday.

42. Because of Defendant's failure to pay overtime and failure to pay all wages due, Defendants failed to timely pay Plaintiff her wages owed.

43. Defendant's failure to make such payments was repeated, knowing, willful, and intentional.

44. Defendant is liable to Plaintiff for all unpaid wages, plus treble that amount in liquidated damages (or such greater amount as may be authorized by law), interest, attorneys' fees, litigation costs and any other and further relief this Court deems appropriate.

## COUNT FOUR
### Age Discrimination in Violation of the
### District of Columbia Human Rights Act
### [D.C. Code§ 2-1402.11]

45. Plaintiff re-alleges every allegation contained in this Complaint as if set forth fully herein.

46. The District of Columbia Human Rights Act makes it unlawful for employers to fail or refuse to hire, or to discharge, any individual; or otherwise to discriminate against any individual, with respect to compensation, terms, conditions, or privileges of employment,

including promotion; or to limit, segregate, or classify employees in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect their status as an employee, wholly or partially for a discriminatory reason based upon the actual or perceived age of the employee.

47. As a direct and proximate result of Defendant's discriminatory decision to terminate Ms. Roth, she suffered and continues to suffer, among other things, changes to the terms and conditions of her employment, lost earnings and benefits, severe humiliation, emotional pain, suffering, embarrassment, and loss of enjoyment of life.

## COUNT FIVE
### Retaliation (Age) in Violation of the District of Columbia Human Rights Act
### [D.C. Code § 2-1402.61(a)]

48. Plaintiff re-alleges every allegation contained in this Complaint as if set forth fully herein.

49. The DCHRA also makes it "an unlawful discriminatory practice to . . .retaliate against" any person who exercised his or her rights under the DCHRA." D.C. Code § 2-1402.61(a)-(b).

50. Plaintiff made reasonable complaints about age discrimination and requested to be treated the same as her younger comparators.

51. Defendant did not properly address Plaintiff's complaints.

52. Plaintiff engaged in protected activity when she made complaints about age discrimination.

53. Plaintiff was, after making reasonable complaints about age discrimination, subjected to adverse employment actions.

54. After making complaints about age discrimination, Plaintiff was terminated from her position.

55. By the acts and omissions alleged above, Defendant intentionally deprived Plaintiff of equal employment opportunities, and otherwise adversely affected her status as an employee.

56. As a direct, proximate, and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, a loss of wages and salary, bonuses, compensation, employment benefits, career path opportunities, and expenses, in an amount to be proved at trial.

57. As a direct, proximate, and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, generally physical, mental, and psychological damages in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, mental anguish, and emotional distress, in amounts within the jurisdictional limits of this Court, to be proved at trial.

58. In acting as alleged above, Defendant acted with the wrongful intention of injuring Plaintiff, from an improper motive amounting to malice, and in conscious disregard of Plaintiff's rights.

59. As a result of Defendant's conduct as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of suit as provided for by applicable law.

### COUNT SIX
### Discrimination on the basis of Disability in violation of the
### DC Human Rights Act
### [D.C. Code § 2-1402.11]

60. Plaintiff re-alleges and incorporates all allegations of this Complaint as if fully set forth herein.

61. The District of Columbia Human Rights Act makes it unlawful for employers to fail or refuse to hire, or to discharge, any individual; or otherwise to discriminate against any individual, with respect to compensation, terms, conditions, or privileges of employment, including promotion; or to limit, segregate, or classify employees in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect their status as an employee, wholly or partially for a discriminatory reason based on their disability.

62. The DCHRA defines "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of an individual having a record of such an impairment or being regarded as having such an impairment." D.C. Code § 2–1401.02(5A).

63. At all relevant times, Plaintiff was a person with a disability.

64. At all times relevant, Defendant had notice of Plaintiff's disability.

65. At the time of Plaintiff's discharge, she was performing her job at a fully successful level.

66. Defendant unlawfully discriminated against Plaintiff by terminating her and/or denying her continued employment, at least in part, on the basis of disability.

67. Defendant's actions as set forth above constitute violations of the DCHRA and have caused Plaintiff to suffer damages.

### COUNT SEVEN
### Retaliation (Age) in Violation of
### the District of Columbia Human Rights Act
### [D.C. Code § 2-1402.61(a)]

68. Plaintiff re-alleges every allegation contained in this Complaint as if set forth fully herein.

69. The DCHRA also makes it "an unlawful discriminatory practice to . . .retaliate against" any person who exercised his or her rights under the DCHRA." D.C. Code § 2-1402.61(a)-(b).

70. Plaintiff made reasonable complaints about age discrimination and requested to be treated the same as her younger comparators.

71. Defendant did not properly address Plaintiff's complaints.

72. Plaintiff engaged in protected activity when she made complaints about age discrimination.

73. Plaintiff was, after making reasonable complaints about age discrimination, subjected to adverse employment actions.

74. After making complaints about age discrimination, Plaintiff was terminated from her position.

75. By the acts and omissions alleged above, Defendant intentionally deprived Plaintiff of equal employment opportunities, and otherwise adversely affected her status as an employee.

76. As a direct, proximate, and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, a loss of wages and salary, bonuses, compensation, employment benefits, career path opportunities, and expenses, in an amount to be proved at trial.

77. As a direct, proximate, and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, generally physical, mental, and psychological damages in the form of extreme and enduring worry, suffering, pain, humiliation,

embarrassment, mental anguish, and emotional distress, in amounts within the jurisdictional limits of this Court, to be proved at trial.

78. In acting as alleged above, Defendant acted with the wrongful intention of injuring Plaintiff, from an improper motive amounting to malice, and in conscious disregard of Plaintiff's rights.

79. As a result of Defendant's conduct as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of suit as provided for by applicable law

## COUNT EIGHT
### Discrimination based on Personal Appearance in Violation of the District of Columbia Human Rights Act (DCHRA)
### [D.C. Code§ 2-1402.11]

80. Plaintiff re-alleges and incorporates all allegations of this Complaint as if fully set forth herein.

81. The DCHRA makes it unlawful for employers to discrimination on the basis of "personal appearance" is a prohibition against discrimination based on "the outward appearance of any person, irrespective of sex, with regard to bodily condition or characteristics, manner or style of dress, and manner or style of personal grooming, including, but not limited to, hair style and beards." D.C. Code § 2-1401.02(22).

82. At all relevant times, Plaintiff was an "employee" of Defendant pursuant to the DC Human Rights Act.

83. At all relevant times, Defendant was the "employer" of Plaintiff pursuant to the DC Human Rights Act.

84. Defendant treated Plaintiff less favorably than her younger and/or cosmetically enhanced counterparts that had a younger and/or more attractive appearance.

85. Despite knowing on the first day of Plaintiff's employment that she had no intention of changing her appearance and that she would remain a "before", Defendant refused to include Plaintiff's photo on the company website.

86. Defendant's actions as set forth above constitute violations of the D.C. Human Rights Act and have caused Plaintiff to suffer damages.

87. As a direct, proximate, and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, generally physical, mental, and psychological damages in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, mental anguish, and emotional distress, in an amount to be proved at trial.

88. Defendants' discrimination of Plaintiff has cost her significant financial loss and emotional distress.

### COUNT NINE
### Retaliation (Personal Appearance) in Violation of the
### District of Columbia Human Rights Act
### [D.C. Code § 2-1402.61(a)]

89. Plaintiff re-alleges and incorporates all allegations of this Complaint as if fully set forth herein.

90. The DCHRA also makes it "an unlawful discriminatory practice to . . .retaliate against" any person who exercised his or her rights under the DCHRA." D.C. Code § 2-1402.61(a)-(b).

91. Plaintiff made reasonable complaints about personal appearance discrimination and requested to be treated the same as her comparators who were or appeared younger, more attractive and/or cosmetically enhanced.

92. Defendant did not properly address Plaintiff's complaints.

93. Plaintiff engaged in protected activity when she made complaints about personal appearance discrimination.

94. Plaintiff was, after making reasonable complaints about personal appearance discrimination, subjected to adverse employment actions.

95. After making complaints about personal appearance discrimination, Plaintiff was terminated from her position.

96. By the acts and omissions alleged above, Defendant intentionally deprived Plaintiff of equal employment opportunities, and otherwise adversely affected her status as an employee.

97. As a direct, proximate, and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, a loss of wages and salary, bonuses, compensation, employment benefits, career path opportunities, and expenses, in an amount to be proved at trial.

98. As a direct, proximate, and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, generally physical, mental, and psychological damages in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, mental anguish, and emotional distress, in amounts within the jurisdictional limits of this Court, to be proved at trial.

99. In acting as alleged above, Defendant acted with the wrongful intention of injuring Plaintiff, from an improper motive amounting to malice, and in conscious disregard of Plaintiff's rights.

100. As a result of Defendant's conduct as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of suit as provided for by applicable law.

## JURY DEMAND

1. Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Sharon Roth, prays for the following relief:

Entry of judgment in favor of Plaintiff and against Defendant for:

a. Back pay;

b. Front pay;

c. Compensatory damages;

d. Punitive damages;

e. Reasonable attorneys' fees and court cost associated with this suit;

f. Awarding prejudgment interest, costs, and disbursement as appropriate herein; and

g. Other such relief as this Court and jury deems equitable, appropriate, and just.

Respectfully submitted,

*/s/ Kristen Farr*
Kristen Farr; DC Bar No. 974953
The Spiggle Law Firm, PLLC
3601 Eisenhower Ave., Suite 425
Alexandria, Virginia 22304
(703) 215-1123, ext. 4 (phone)
(202) 517-9179 (fax)
kfarr@spigglelaw.com

*Counsel for Plaintiff, Sharon Roth*